**BARNES v. UNITED STATES (three cases).**
**Civ. Nos. 1604, 1661, 1662.**

United States District Court
W. D. Kentucky, at Louisville.

Feb. 25, 1952.

52

Ephraim K. Lawrence, Jr., Foster Stone, Louisville, Ky., for plaintiffs.

David C. Walls, U. S. Atty., Norris W. Reigler, Asst. U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

These actions were filed in this Court on February 21, 1949, and April 27, 1949, under the provisions of the Federal Tort Claims Act of 1946, Title 28, U. S. C. § 1346 (b).

The plaintiffs, Pfc. James D. Barnes, who was twenty-five years of age at the time of the trial, and Lillie Barnes, who was twenty-three, are husband and wife, and plaintiff James D. Barnes, is their son and was one year of age at the time of the accident.

It is alleged in the complaints that on December 21, 1948, at 2:30 p. m., plaintiff James D. Barnes was operating his auto-

mobile, in which plaintiffs Lillie Barnes and James D. Barnes, Jr. were riding as guests, in a southwardly direction upon Highway 31–W near Muldraugh, Kentucky, when one William D. Gardner, an agent and employee of the Government, acting within the scope of his employment, so negligently operated a truck belonging to the government as to cause it to collide with plaintiffs' automobile, thereby inflicting the injuries for which the plaintiffs seek redress.

Plaintiff Pfc. James D. Barnes seeks to recover, in his complaint, $2,000 damages for permanent injuries and pain and suffering and $500 damages for property loss, consisting of his 1935 Ford Automobile and certain items of clothing. This amount is reduced in plaintiff's tendered Findings of Fact and Conclusions of Law to $1,500.

Plaintiff Lillie Barnes seeks to recover, in her complaint, damages in the amount of $10,000 for permanent injuries and pain and suffering and $1,000 for medical expenses, past and future. This amount was reduced in this plaintiff's tendered Findings of Fact and Conclusions of Law to $8,000.

Plaintiff James D. Barnes, Jr. seeks to recover, in his complaint, damages in the amount of $100,000 for permanent injuries and pain and suffering and $10,000 for medical expenses, past and future. This amount is reduced in his tendered Findings of Fact and Conclusions of Law to $10,000.

The answer of the Government denies all allegations with respect to negligence and affirmatively pleads that the plaintiff Pfc. James D. Barnes operated his automobile in such a negligent manner as to cause it to come into collision with the government truck and that such negligence of plaintiff was the direct and proximate cause of the collision.

The Government, at the trial, raised the question of plaintiff Pfc. James D. Barnes' right to recover under the Federal Tort Claims Act, relying on Brooks v. United States, 337 U.S. 49.

The cases were consolidated for trial and tried to the Court, in accordance with the procedure prescribed by the Federal Tort Claims Act, on November 27, 1950. At the conclusion of the evidence, all parties requested leave to submit briefs upon the question of damages within a reasonable time and plaintiffs were granted leave to file certain clinical records of plaintiff James D. Barnes, Jr. Plaintiffs having submitted their briefs and the clinical records and the Government having indicated its intention not to submit briefs, the cases are now under submission and the Court makes the following—

### Findings of Fact.

1. On December 21, 1948, at approximately 2:30 p. m., plaintiffs were proceeding southwardly along Highway 31–W, a public highway, in the vicinity of Muldraugh, Kentucky, at a speed of approximately 35 mph. Plaintiffs had left their home in West Point, Kentucky, intending to drive to Florida, plaintiff Pfc. James D. Barnes being on a pass at that time, but with a furlough to begin the next day. Their plans were to stop at Ft. Knox on their way and pick up the furlough papers. Plaintiff Pfc. James D. Barnes did receive these papers that night, following the accident.

2. On the same date, at approximately the same time, one William D. Gardner, a truck driver employed by the Jeffersonville Quartermaster Depot, an agency of the United States Government, approached plaintiffs in a government truck proceeding northwardly along the highway toward Louisville, Kentucky, at a speed of approximately 50 miles per hour. Gardner had driven from the Jeffersonville Depot, in Jeffersonville, Indiana, earlier in the day to Ft. Knox, Kentucky, where he had acquired something less than a full load of automobile parts, and was at this time returning with these parts to the Jeffersonville Depot.

3. At the point where plaintiffs met the government truck, the highway consists of three full lanes and is free of any obstructions of the view. Plaintiffs were proceeding in their right hand, or west, lane and the government truck driven by Gardner was in the east lane as the two vehicles approached each other. Plaintiff Pfc. James D. Barnes testified that the govern-

ment truck attempted to pass two automobiles proceeding north in front of it and as a result collided with plaintiffs' car in the west lane, the truck's right front fender striking the left front fender of plaintiffs' car. Gardner testified that as he approached plaintiffs' car, the vehicle in front of him made a sudden turn into a driveway to the east of the highway, causing him to apply his brakes suddenly, which, in turn, caused the truck to swerve to the left, colliding with the plaintiffs' car in the west lane. He stated that he was from fifty to seventy-five yards behind the automobile when he first became aware of its turn and that he "hit" his brakes "pretty fast" and turned sharply into plaintiffs.

4. As a direct result of the accident, plaintiff Pfc. James D. Barnes received cuts on his forehead and scalp which have since healed, leaving scars, and injuries to his right wrist and arm and to his back. He testified that his wrist has "never been right" since the accident, that he cannot grip with his right hand, that it sometimes swells and hurts to drive or to hold heavy objects. He states that his back is still weak and hurts when he attempts to lift objects or when he sits too long.

Dr. Parnell Rollings testified that he treated all the plaintiffs on September 2, 1949, and from twelve to fifteen times thereafter, until some time in December 1949. He stated that at that time, there was no limitation of motion in this plaintiff's wrist, but that there was a limitation of grip, and that there was a small amount of muscle spasm in his back.

This plaintiff's medical expenses were:

(1) Dr. Parnell Rollings .......$20.00

5. As a direct result of the accident, plaintiff Lillie Barnes received cuts upon her face and forehead and upon both legs, a fractured skull, and was rendered unconscious by the accident. She was admitted to the station hospital at Ft. Knox, Kentucky, on the afternoon of the collision, where she remained until January 3, 1949. She states that she first remembers December 29, 1948, but the hospital records indicate that she was inquiring about her son on the day following the accident, although still confused at times on December 23, 1948.

She consulted Dr. Parnell Rollings from September 2, 1949, until December 1949, and from that time until August 1950, when she moved to Florida with her husband and child, she states that she consulted the doctors at the Ft. Knox hospital.

She further stated that she is now suffering from frequent headaches and dizzy spells, that she has collapsed on one occasion and spent a week in bed, and that she had a dizzy spell the morning of the trial.

Dr. Rollings testified that upon his examination of this plaintiff on September 2, 1949, he found evidence of a number of abrasions that had healed, a deep laceration of the right shin, and a divided scar on her upper eyelid above the left eye. He states that she complained at that time of a burning pain in her lower abdomen, was highly nervous, and could not maintain a steady stream of thought. At that time, there was no external evidence of her fractured skull, but her reflexes were overactive. In his opinion, she is of a natural high-strung nature and the aggravation of this tendency by the accident will become progressively worse. He recommended that she undergo an operation.

Dr. Leo Block, as witness for the Government, testified that he examined this plaintiff on November 25, 1950, and found a healed scar over the left eye, a healed scar over the left leg, and exaggerated reflexes. He stated as his conclusion that she is a "very nervous woman with a disfiguring scar above the left eye and exaggerated reflexes".

Her medical expenses were—

1. Dr. Parnell Rollings .......$100.00
2. Hospital bill .................18.90

6. As a direct result of the accident, plaintiff James D. Barnes, Jr. received a simple comminuted fracture of the third through ninth ribs on his right side, a simple comminuted fracture of his left forearm, an avulsion of his lower teeth resulting in the extraction of four of them, severe laceration of his right cheek, a fractured skull, bronchopneumonia, and pneumothorax, which resulted from the fracture

of plaintiff's ribs. The record of these injuries appears on the clinical record of this plaintiff filed by the Government, and is supported by the testimony of both doctors. He was in the Ft. Knox hospital from the date of the accident until January 12, 1949, and again from January 19 to January 21, 1949, a period of twenty-four days.

Dr. Rollings examined this plaintiff on September 2, 1949, and testified that he found evidence of the above injuries, with no external evidence of any injury to the brain, but in his opinion the injury to his chest would cause recurring trouble. During this period, he treated this plaintiff for bronchitis. In his opinion, the lost teeth will be replaced by new permanent teeth, but these teeth will not be straight because of the injury to the gums.

Dr. Leo Black, a witness for the Government, examined this plaintiff on November 25, 1950, two days before the trial, and testified that he found him to be a well nourished, normal, and active child; that he found a healed scar on his right jaw; that there was no deformity or loss of use of his arm or hand; and that the lost teeth would normally be replaced by permanent teeth in a year or so, though he could not tell, without an X-ray, whether the gum had been injured to such an extent as to affect the alignment of these teeth. His expenses were—

1. Dr. Parnell Rollings ........$35.00
2. Hospital bill .................32.40

7. As a direct result of the accident, plaintiff Pfc. James D. Barnes was injured to the extent of $400 by the destruction of his automobile, which he testified was worth $450 immediately prior to the accident, but was worth only $50 immediately afterwards, and to the extent of $100 by the destruction of wearing apparel of himself, his wife, and his child, and their baggage. He stated that he was familiar with the price of used cars in this community at that time, by reason of having purchased two other cars on the used car market prior to purchasing the one in suit, and he felt that he could place a fair value upon this automobile.

## Conclusions of Law

■ The Court concludes as a matter of law, that William Gardner, an agent of the Government, while acting within the scope of his employment, was negligent in the operation of his truck, either in attempting to pass another automobile or in applying his brakes in such a manner as to cause the government vehicle to swerve out of control, so as to cause his vehicle to collide with plaintiffs' vehicle in their right hand lane.

■ The plaintiffs were not guilty of contributory negligence. There is no evidence anywhere in the record to indicate that plaintiffs could have in any way avoided this accident; the testimony of both the plaintiff James D. Barnes and the Government driver showing that the lapse of time between the pulling out or swerving of the government truck and the impact was of such brevity that the collision could not have been avoided by plaintiffs.

■ The plaintiff Pfc. James D. Barnes is not precluded by his status as a soldier fro mrecovery under the terms of the Tort Claims Act. The only distinction to be drawn between the case at bar and that relied upon by the defendant—Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200—is that here plaintiff Barnes was not, techncally speaking, upon furlough, as were the plaintiffs in the Brooks case, but was upon a pass which ended the following day at the time his furlough started. This distinction is not sufficient to take this case from the rule as laid down by the Supreme Court, when it said, 337 U.S. at page 52, 69 S.Ct. 920: "But we are dealing with an accident which had nothing to do with the Brooks' army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired. Were the accident incident to the Brooks' service, a wholly different case would be presented."

■ IV. The plaintiff, James D. Barnes, is entitled to recover damages in the amount of $50 for personal injuries and pain and suffering; $350 for the loss of his automobile; and $100 for the loss of personal property, making a total of $500.

**V.** The plaintiff, Lillie Barnes, is entitled to recover damages in the amount of $3,000 for personal injuries and pain and suffering; $118.90 for medical expenses, making a total of $3,118.90.

**VI.** The plaintiff, James D. Barnes, Jr. is entitled to recover damages in the amount of $5,000 for personal injuries and pain and suffering and $67.40 for medical expenses and hospital bills, making a total of $5,067.40.

Judgment will be entered in accordance with the above findings.