John R. SCHMID, Petitioner and Plaintiff,

v.

Donald RUMSFELD, Secretary of Defense; James V. Middendorf II, Secretary of the Navy; Louis H. Wilson, Jr., Commandant of the Marine Corps; Lieutenant Colonel J. I. Westfall, Commanding Officer, Marine Barracks, Naval Air Station, Alameda, California, Respondents and Defendants.

No. C–76–184–CBR.

United States District Court, N. D. California.

Oct. 1, 1979.

**20**

Martha Louise Caron, John Vaisey, San Francisco, Cal., for petitioner and plaintiff.

G. William Hunter, U. S. Atty., Patrick Ramirez S. Bupara, Asst. U. S. Atty., San Francisco, Cal., for respondents and defendants.

## ORDER GRANTING MOTION TO DISMISS

RENFREW, District Judge.

Plaintiff, an active duty member of the United States Marine Corps at the time this action was commenced, filed suit on January 27, 1976, pursuant to 28 U.S.C. §§ 1331, 1361, 2241, 2242, 2243, and the Fifth Amendment, alleging that his military superiors had willfully denied him his rights as guaranteed by the Fifth Amendment, 10 U.S.C. § 5947, and the Uniform Code of Military Justice, and asked for a writ of habeas corpus ordering his discharge from the Marine Corps, a temporary restraining order enjoining his transfer, and damages in the sum of $250,000. Plaintiff was subsequently discharged in June 1976, at which point the sole issue in this case became whether he was entitled to recover damages against his former superior officers for a "constitutional tort" under the Fifth Amendment. This Court concludes that the *Feres* doctrine [1] bars plaintiff from bringing his action and therefore dismisses his complaint.

### FACTUAL BACKGROUND

On January 28, 1973, plaintiff enlisted in the United States Marine Corps. Beginning in December 1974 he acted as an informant for the United States Navy and Marine Corps at the Alameda Naval Air Station ("Alameda"), and assisted in the recovery of stolen government property and the prosecution of drug offenses. As a result of this work, plaintiff began receiving threats on his life. Plaintiff communicated these threats to his commanding officer and others, but received no protection or transfer from Alameda, despite the occurrence of several suspicious events, such as apparent sabotage of a vehicle he was driving. Finally, plaintiff was given orders on August 26, 1975, to report to Okinawa where, he was told by other Marines, an attempt would be made on his life. After pursuing other remedies in vain, plaintiff filed this action alleging willful neglect of his civil rights as afforded by the Constitution and the laws of the United States and asked that the Marine Corps be restrained from sending him to Okinawa or keeping him at Alameda; that they be ordered to protect him and immediately discharge him from the Marine Corps; and that he be awarded $250,000 damages. The request for a temporary restraining order was heard the same day that the suit was filed, and an agreement was reached whereby the United States guaranteed that plaintiff would not be removed to Okinawa nor required to report to Alameda pending the outcome of this suit.

On March 24, 1976, in violation of the above agreement, plaintiff was ordered to report to Alameda on March 26, 1976, to take a special physical fitness test. Plaintiff was apprehensive about the event and attempted to have it stayed but was unsuccessful. On March 26 he showed up as ordered, began the test, but was assaulted and beaten and had to be hospitalized for several days. On April 15, 1976, a supplement to the petition and complaint was filed, incorporating the above events. In June, 1976, plaintiff was discharged from

---

1. *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

the Marine Corps. At present, only plaintiff's claim for damages resulting from the deprivation of constitutional rights remains.[2]

■ On September 23, 1976, defendants filed a motion to dismiss, which was denied March 8, 1977. A motion for reconsideration was then filed September 23, 1977, and two of the four defendants, the Secretary of Defense and the Secretary of the Navy, were dismissed on August 4, 1978. The motion for dismissal of the claims against the Commandant of the Marine Corps and the former Commander of the Marine Barracks was taken under submission.[3] Thereafter the judge to whom the case was assigned disqualified himself, and the case was reassigned to the undersigned judge. The parties further briefed the motion to dismiss the remaining defendants, the Commandant of the Marine Corps, Louis H. Wilson, Jr., and the former Commander of the Marine Barracks at Alameda, Lt. Col. J. I. Westfall. The matter was argued on July 5, 1979, and taken under submission.

■ Actions against responsible federal officers under the Fifth Amendment are now clearly permissible. *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). However, the instant case faces the additional hurdle posed by the policy underlying the Supreme Court's holdings in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977),

that the Government is not liable for injuries arising from or through activity incident to service. Plaintiff argues that these cases are distinguishable on several grounds. First, he asserts that these cases involved suits against the sovereign and not individuals. However, as the Court of Appeals for the Ninth Circuit has noted, the same policy considerations are present in either event. *See Tirrill v. McNamara,* 451 F.2d 579 (9 Cir. 1971) (*per curiam*); *Bailey v. Van Buskirk,* 345 F.2d 298 (9 Cir. 1965), *cert. denied,* 383 U.S. 948, 86 S.Ct. 1205, 16 L.Ed.2d 210 (1966). Plaintiff then argues that such cases involved common law, rather than constitutionally based, torts. Such a distinction is impractical; if the Court were to do so, suits against military personnel would become scholastic exercises in pleading. *Nagy v. United States,* 471 F.Supp. 383 (D.D.C.1979); *Thornwell v. United States,* 471 F.Supp. 344 (D.D.C. 1979); *Misko v. United States,* 453 F.Supp. 513 (D.D.C.), *aff'd,* 193 U.S.App.D.C. 217, 593 F.2d 1371 (D.C.Cir. 1978). Third, plaintiff argues that the present case may be distinguished because it alleges intentional, rather than negligent, torts. Neither the language nor the rationale of the *Feres* decision indicate such a distinction. *E. g., Citizens National Bank of Waukegan v. United States,* 594 F.2d 1154, 1157 (7 Cir. 1979); *Thornwell v. United States, supra,* 471 F.Supp. at 348. Finally, the Court cannot agree that the voluntary nature of plaintiff's work necessitates the conclusion that his injuries did not "arise out of" or were not "in the course of activity incident to service."[4]

---

2. Plaintiff's third and fourth claims for relief were based on 10 U.S.C. §§ 5947 and 893, respectively. However, as all plaintiff's memoranda have since made clear, plaintiff's claim under either section is really a Fifth Amendment claim based on defendants' alleged violation of the duties imposed by these statutes. Regardless of whether such a distinction in levels of duties is possible under the Fifth Amendment, the logic of the Court's decision in this case makes any such distinction irrelevant. The second and sixth claims are now moot, and the fifth claim has never been argued and is covered by this Court's decision in any event.

3. Regardless of the validity of the Court's disposition of this motion, the claim against Louis

H. Wilson, Jr., Commandant of the Marine Corps, must be dismissed. Plaintiff alleges willful conduct by defendants, but the only connection of Wilson with the events alleged is that plaintiff petitioned his office for help. By no stretch of the imagination does this involvement somehow amount to willfully violative conduct toward plaintiff.

4. *Cf. Mason v. United States,* 568 F.2d 1135 (5 Cir. 1978) (per curiam) (motor vehicle accident occurring while serviceman tending to personal business on way home); *Hass v. United States,* 518 F.2d 1138 (4 Cir. 1975) (serviceman injured while riding horse he rented from stable owned and operated by Marine Corps); *Nagy v. Unit-*

While the Court deplores the lack of judgment shown by plaintiff's superiors in this most unfortunate case and regrets deeply his injuries, it appears that plaintiff has no claim for relief. Because of this Court's holding, it need not consider the other issues raised by plaintiff.

Accordingly, IT IS HEREBY ORDERED that defendants' motion to dismiss is granted.

IT IS HEREBY FURTHER ORDERED that counsel for defendants shall prepare an appropriate form of judgment in accordance with this order and submit it to the Court for execution within ten (10) days of the date of this order.

ed States, 471 F.Supp. 383 (D.D.C.1979) (participation by serviceman in two LSD medical experiments conducted by United States Army). *See also Troglia v. United States*, 602 F.2d 1334 (9 Cir. 1979), where the court noted that "[i]t would appear to be fairly well established that if a serviceman is injured while on-base, he cannot recover under the FTCA, whatever the cause of the injury," at 1337, although it reversed and remanded the case for further fact determination.